Judge Marshall
delivered the Opinion of the Court.
This bill was filed by Breckinridge, in 1826, to enjoin a judgment obtained against him, on a note, executed in 1841, in part consideration of a conveyance then made to him by the heirs ofRichard J. Waters, of lot No. 191, anc[ p0jnt 0f Beargrass, in the then town of Louis-1 , . .. ville; or, as the deed should be construed, in considera^on 0f a conveyance of such interest therein as the grantors, as the heirs of R. J. Waters, had, or would bave bad, by descent, supposing him to have died intestate; his title being derived solely from a mortgage executed to him, by Daniel Brodhead, in September, 1788, for securing the payment of five hundred and ninety-seven pounds, in twelve months, which mortgage is distinctly referred to in the deed, as being of record, and as the foundation of the title set up by the heirs. The deed also contains an explicit provision exempting the grantors from all responsibility to warrant the title against any person or persons whatsoever, or to refund the purchase money, or pay damages, in any event or for any cause whatsoever.
The bill alleges that the agent of the grantors, who negotiated the transaction, had represented that the mortgage was for a true debt, and was subsisting and unreleased; that the mortgagee had died intestate, and without issue, leaving the grantors his heirs at law, entitled to his real estate, and that they would sue foi', ánd recover, the said lots, which were in his possession, claiming under the mortgagor (though he fails to exhibit a perfect chain of title from him;) and that, under the *621 belief and apprehension that such was the true nature of their claim, and that it would be a valuable confirmation of his title and possession, he had purchased it and received the conveyance. But that he has since discovered that said R. J. Waters had made a will, in which he acknowledged, that this mortgage was made for the fraudulent purpose of hindering and delaying Brodhead’s creditors, and had in fact released it. He also states, that by his will, Waters had devised all his estate to his brother and four sisters therein named. And prays that the judgment may be perpetually enjoined, and, in effect, that the contract may be rescinded.
Tlte answers,&c
The will referred Ind which m'en^ “ bills of debtor had made the testator, creditorJentfrom sacnficmg his rects the ex’ors, ”jP“e“t and'payment of the bal"^debtor to r” lease the bills of c?¿¡ijg » thus used, may include a mortgage on land:but if they do, the released*3by the will, and never having been released, by payment of the debt secured by it, or otherwise, nor attacked by creditors, though it had become ancient—it still rests upon a valuable consideration, and is good as between (he parties to it; and the fraudulent intent with which it was made, is no ground for rescinding a chancing bargain, by which a party in possession of the land had purchased the mortgagee’s title from his heirs—to add to the security of his own possession and the title which he claimed to hold under the mortgagor. • • ' n 1
The answers deny all knowledge, or represesentar. tions, as to the original consideration or validity of the mortgage; deny that the defendants pretended to have, or to convey an indefeasible title, and deny all knowledge or belief that R. J. Waters had made a will; and there is no sufficient proof to counteract these denials. They also contest the genuineness of the paper relied on by the complainant as the will of Waters. But it has been since admitted to probate, and must be considered as genuine. It does not, however, release the mortgage; nor is it certain that it makes any reference to it. It speaks of a bill of sale from Brodhead, as having been made to protect his property from creditors, and directs. ms executors upon a fair settlement ot accounts with Brodhead, and a payment by him of the just balance,'to release all bills of sale.
The clauses of the will relating to this subject, are stated at large in the opinion of this Court in the case of Breckinridge and Maupin vs. Waters’ Heirs (5 Monroe, 150,) to which reference is made for this and other de- , , , i , , i.i tails, not deemed necessary now to be made at large, The will, as now exhibited, is dated on the 30th-, 1788, instead of the 30th of August 1788, as it was in *622 the case referred to; and the argument derived from the comparison of the dates of the will and mortgage, as then used, to show that this mortgage was not referred' to*n wh^°h was made before the mortgage was,, lost its force. But admitting, as we are inclined to do, that this mortgage, though not accurately described by the terms bill or bills of sale used in the will, should nevertheless, though not directly referred to in the will, be considered as one of the transactions, the motive to which is therein explained, and as one of the instruments therein directed to be released on payment being made ;■ still if it be so, it stands upon a valuable consideration, is good between the parties, and is not released by.the will; and it does not appear, that it has been avoided by a creditor or purchaser, though nearly fifty years have elapsed since its date, more than half of which period had passed when Breckinridge purchased. Nor does it appear that any person now stands in the attitude to impeach it for fraud; nor does it appear that the debt secured by it had been paid when the heirs conveyed, unless the payment be proved by lapse of time, of the effect of which, Breckinridge of course had knowledge.
We are, therefore, of opinion that, even if this mortgage is proved by the will to have been fraudulent and subject to be avoided, and if Breckinridge was ignorant of its character when he purchased under it, he has not now shown any such pi'obability of injury arising from the fact discovered, as really to impair the value of his title, in which he had not been disturbed, although twenty years had elapsed from the date of his deed, to the final hearing of this cause. But farther, it seems to be evident from the recitals of the deed in question, which are fully stated in the opinion above referred to, and from the strict exclusion of all responsibility on the part of the grantors, and also from the statements of the complainant himself, in this bill, and from his admissions in the previous bill, of 1823, which is incorporated into the present record, that his object in making the purchase, was merely to fortify his possession, with the apparent legal title which the mortgage carried, or seemed *623 to carry, with it; and that he was willing to run all risks as to any latent defects in the title to be acquired. Our predecessors seem to have entertained the same opinion.
Where conflicting claims are as serted, and, by way of compromise, one party buys the title or claim of the other, whereby litigation is settled or prevented—the arrange ments are favored, and will not be disturbed, when there is no fraud, because the interest sold turns out to be lessvaluablethan one or both of the parties believed it to be— especially, when the purchaserhas undertaken to run all risks as to the title purchased.
A tenant in possession having purchased an adverse title that had descended to heirs, to strengthen bis own, and having enjoyed all the advantages expected from the purchase,and still undisturbed in the possession —the discovery of a will, by which their ancestor had devised the land to others," would not be sufficient ground for a rescission.
Moreover, the deed itself, as well as this bill, shows that this was a compromise of conflicting claims. As to lot 191, for which, it may be infered that a_ suit had been brought, it was expressly so; and as to the other lot, it was essentially so, as both parties set up claim to it, and the defendants, as appears from the bill, were about to sue. Such arrangements, by which litigation is terminated or prevented, and conflicting claims to land quieted and united, are favorably regarded; and, in the absence of fraud, for the imputation of which there is no ground in this case, will not be set aside because it has been subsequently discovered that one of the ■claims was not, in fact, as good as it seemed to be at the ■time, and as both parties may then have thought it. And certainly, it should not be set aside at the prayer of a party who obviously undertook to run all risks, and who has in fact, derived all the benefit from the compromise, which he had a right to expect, and all which he could have derived if the title under the mortgage had been free from imputation, and if every statement in the deed had been literaly true, as we are to presume it was honestly supposed to be by the grantors.
Upon these grounds, we should feel great hesitation in setting aside this contract—even if it appeared, that the grantors in the deed, who are admitted to be the heirs of Waters, were not the persons entitled under the will. For, first—the existence of the will being unknown when the contract was made, the evidences of title from R. J. Waters were all in favor of the heirs, who might have asserted that title by action for the recovery of the possession from Breckinridge, just as effectually as if there had been no will in fact; and it is immaterial to Breckinridge, that—-as he has since discovered—such recovery would have been for the benefit, not of the heirs, but of other persons as devisees. He quieted the right of suit which the heirs undoubtedly had, and he has, in fact, gained thereby such time in aid of his possession, as to *624 bar any assertion of title by tire devisees, even if they are different persons, and if by the will the title to this land passed to them. But, second—there is, to say the least, great doubt whether, upon the face of the will, the title to this mortgaged land passed to the devisees. If, as is contended for by the complainant, and as we are inclined to admit, this mortgage is the instrument directed to be released upon payment of the balance due, it is very clear that the testator did not consider the mortgaged land as a part of his estate, but merely the money due upon it; and that the money alone was included in the direction to his executors, to divide all his estate between the persons named in the will. In which case, as we are inclined to think, the mere legal title would have descended to the heirs. And, as we have already stated, it was the mere legal title which Breckinridge wanted; and it seems to have answered, in the event, all his purposes. Third. It seems to be a principle well settled that, unless the mortgagee has reduced the mortgaged premises to possession, or shows, in his will, that he considers them as land, they will not, pass as land by the will; and therefore, even if there were no express indication that the testator meant to give to his devisees nothing hut the proceeds of this mortgage—there being no indication of an intention to give them the land, and nothing to show that ho considered the mortgaged land as a part of his estate, we are inclined to think, that the proceeds only, and not the land itself, would be considered as passing by the will. By which construction, the legal title would be left as before, to descend to the heirs—not indeed, fortheir-own benefit, but in trust for the executor and devisees. Under this construction, their conveyance passed the legal title—will or no will; and it has been, in fact, fully available to Breckinridge, who has no interest in the question of their responsibility to the subsequently discovered cestui que trust.
Mortgaged land does not pass as land by the will of the mortgagee, unless he lias reduced it to possession, or uses expressions showing that he intends to devise the land, and not the debt secured by it.
The allegations of a bill taken pro confesso, are to be construed strictly.
In an amendment filed for the purpose of making an administrator def’t, and requiring him & the heirs $•«.— def’ts to the original bill, to interplead,the com plainant charges “that the devisees ofE,. J. W, and the said T. J. W. &c. ara not the same per sons, & of course neither entitled to the lots.,nor to the money secured on them.” Held, that this •sentence, in an ■unanswered bill, being evidently susceptible of va rious meanings, vague and uncertain, is not sufficient to put in issue the fact, (never before con averted that r. J. W. and others named with him, are.ln th® devisees referred to, nor to justify that P^e'"lieira1 viz:T.J.W.&c. a^dlffererirpersons- It should as* nn\alhUuiou! -that the adm’ris entitled to the money, and not the beirs or dw*
*624 But we are clearly of opinion, upon the whole record before us, that the grantors in the deed, being, as is not denied, the heirs of Waters, are also the persons entitled to his estate under the will. This is impliedly admitted in the bill itself, and, as is plainly to be inferred, has *625 been admitted from the commencement of this protracted litigation, in 1819, until the final hearing of this bill, in November, 1824; unless it can be considered as effectually controverted in an amende dbill filed in July, 1833, and which was not answered by the heirs, who are admitted to be non-residents. That bill, filed for the avowed purpose of bringing the administrator of R. J; Waters before the Court, states, that the will of Waters had lately been proved in the County Court of Jefferson, and that said court had appointed L. Jones administrator with the will annexed; and that Jones threatens to foreclose the mortgage &c: and prays that Jones and the prior defendants may interplead, &c. In this bill, the complainant charges, that “the devisees of R. J. Waters and the said Thomas J. Waters, &c. are not the same persons, and of course neither entitled” to the lots, nor to the money secured -on them.
The question is, whether this charge being unanswered, is to be taken as establishing the fact, .that the grantors in the deed are not entitled under the will of R. J. Waters. It would be difficult, by any rule of literal or grammatical construction, to determine whether the .•charge is, that the devisees are not entitled, or that the said Thomas J. Waters &c. are not entitled, dr that neither the devisees nor said T. bomas J. Waters &c. are entitled, , , , T , . ,, , , to the lots or the money. Looking to the professed obiect of the bill, which was to bring in the administrator., *' iii° to contest the right to the money, it might be rationally supposed, that the complainant meant to assert, as the foundation for the proposed interpleader, that neither .the •devisees, nor heirs., were entitled, but that the administor was. And it is by no means improbable, that it was so understood in the court below, where no other effect seems to have been given to it. But as this want of ti- . , , - , tie seems to be ascribed as a consequence of the non-identity of the devisees and “the said Thomas J. Waters •&c.” it may have been intended to assert that the latter had not title, either to the lots or the money.
The question thep would be, who are “Thomas J. Waters &c.” of whom it is asserted that they are not the same persons as the devisees. And if they be not alto* *626 gether the same persons, does it follow that they arc therefore not the persons entitled under the devise? “The said Thomas J. Waters &c.,! of course refers to T» jv Waters and others mentioned with him in previous parts of the proceedings. But we find three sets of persons mentioned with him, partly the same and partly different, besides those mentioned with Thomas J. Waters as devisees in the will. Is it T. J. Waters &c. who are defendants, or T. J. W. &e. who are grantors in the deed, or T. J. Waters &c. who are stated in the deed to be the heirs of R. J. Waters, that aro here asserted not to be the same persons as the devisees? This allegation seems too'uncertain and vague to be made the foundation of an inference opposed to every implication from the record, and contradicted by the fact that after the lapse of many years from the discovery of'the will, no persons had appeared under the character of devisees to contest the right of the heirs.
But even if this difficulty in ascertaining who were referred to by the “&e.” were overcome, and it were admitted to be sufficiently certain, that the complainant, without any alleged cause for changing his ground, intended now to charge that the persons named in the deed as heirs of R. J. Waters and who, with others, are grantors, are not the same persons named as devisees, it does not necessarily follow, that they are not entitled under the devise. The will directs the estate to be divided between- five persons named as the brother and four sisters of the testator; the deed represents that six persons are the heirs of the same individual. It is certain that the five are not the same as the six» And yet four of the five may be, as they appear to be, the same-as four of the six; and the remaining two, of the six, may be, as they are stated to be, the children and heirs of an individual who may be, and appears to be, the remaining one of the five devisees. And thus, although the six persons claiming to be heirs are not the same as the five persons named as^ devisees, they may be the persons entitled under the devise.
We have construed this charge strictly, because all bills should be construed strictly when they are taken *627 for confessed; and because, this allegation, considering the time and circumstances of its being made, should be so construed, and when so construed it amounts to nothing substantially affecting the title of the heirs, or the merits of this case. We are of opinion, therefore, that Breckinridge has made out no sufficient ground for rescinding this contract; and that the Court did not err in dismissing his bill.
J"¡“s Held, that the administrator in this case, is not entitled to the proceeds of the land mortgaged to the decedent and sold by his heirs—for reasons following.
titled to the mort fsfenutofheeon veyance, which fi„nation of "the sale, as far as the decedent was mterested. The ndm’r does not allege that the heirs are not entitled under the will; nor that creditors or other devisees are en-'
Tho’ the person? al representative is in general entitled to the money due on n mortgage, he holds it in trust anVdtstributees* Ce¡vued thermo?ey (or have a judgment for it,) they will not be decreed to pay it to the adm’r, whose duty it would be to repay it to them. And—when a decedent lias been dead 20 years, the presumption is, that no debts remain., against his estate.
We are also of opinion, that there was no error in dismissing the cross bill of L. Jones, the administrator with the will annexed,' who, making his answer to the amended bill of Breckinridge, a cross bill, claimed the benefit of the contract made between Breckinridge and the heirs of Waters, and prayed that the money might be paid to him.
It is to be observed, and might have been before stated, as corroborating the inference that the heirs are entitled also under the will, that the administrator does not intimate, that the heirs are not so entitled, nor base his claim upon the allegation that other persons, as devisees, would or might be entitled to the money; but simply claims it on the ground, that he is the personal representative of the mortgagee, and, as such, entitled to the proceeds of the mortgage, and that he assents to the conveyance of the legal title, by the heirs, and claims the J „ ,, . . TT . , . . benefit of that transaction. Mere again would be am-pie confirmation of the right of the heirs, as far as the mortgagee himself had right, and of the efficacy of their conveyance to that extent.
But we are of opinion that the administrator lias shown no right to this money, for several reasons. First. Although an administrator is entitled, in general, to the money due on a mortgage, he holds it in trust only for the benefit of creditors and distributees; and as the administrator here does not allege that there are any debts, and as from the. lapse of more than twenty years from the death of Waters, it may be presumed that there are no debts, it follows that the administrator, if he had the ’ *628 money, would, for all that appears in this case, hold it merely for the benefit of the heirs, who are the distributees or devisees. And as he would be compellable to make immediate payment to them, it would be a useless ceremony to decree the. money from the heirs to him, merely that he might pay it back to them. The cases in England, in which the heir at law has been compelled to pay the mortgage debt, or to give up the mortgaged property to the personal representative after he has been many years in possession, stand upon a principle which is not applicable in this country, where the heirs and distributees are, in general, the same persons, and the administrator or executor is their trustee. While in England the executor and the distributees have a different and opposite interest, so far as this question is concerned from that of the heir at law, And the heir is not, in general entitled to the pei’sonalty.
The heirs having sold the land on-which their ancestor held a mortgage, for a consideration to be paid to them, and some twenty year3 having since elapsed,the presumption is, th.at the personal ' representative then acting assented to the arrangement; and the money will not be decreed to the adm'yde bonis non.
Second. It may be presumed from lapse of time, that a previous administrator had assented to the arrangement between the heirs and Breckinridge. And this, presumption is fortified by the fact, that there had been a previous administrator, as appears by the terms of Jones’ appointment as administrator de bonis non, and, also, by the fact, that William Lit tell, who, as guardian of the infant grantors, executed the dped to Breckinridge, states, in his answer to the bill of 1823, filed by agreement in this suit, that he had taken out letters of administration on the estate of Waters. And this presumed assent of the previous administrator, must be deemed a bar to the demand of the present administrator, especially when he shows no reason why there should not have been such assent,- and no substantial purpose or motive for now asking to have the money.
Third. Other difficulties in the way of the administrator’s claim, might be stated, as growing out of the nature of the transaction itself, and the great lapse of time since the date of the mortgage, and especially from the recitals of the will, from which it is to be inferred, that the sum mentioned in the mortgage was not the sum actually due.
But without going into these details, we are of opinion. *629 prt the grounds before stated, that the Court did not err in disallowing the administrator’s claim.
Wherefore, the decree, both as to the original bill of Breckinridge, and the cross bill of Jones as administra# tpr of Waters, is affirmed.